**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RECEIVED
Mail Room

MAR 17 2023

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

**JOHN PAUL DURBIN,**

   *Plaintiff,*

   v.

**KEVIN OWEN MCCARTHY, et al.,**

   *Defendants.*

Case No. 1:22CV03222 (CRC)

## OPPOSITION TO MOTION TO DISMISS

Plaintiff's Complaint was never solely anchored upon COVID-19 restrictions in place at the United States Capitol Complex, whether October 2021 or October 2022, or their now-current removal, in 2023. Representations to the Plaintiff by congressional staffers in those October 2022 telephone calls never included language by staffers, barring citizen entry exclusively grounded upon COVID-19. The October 12 and October 19 phone calls did not touch on COVID-19, as clearly stated in the Complaint, other than that the Capitol was opened for tours without mask. Compl. at 5. Yet the Capitol Police website chose to tell the digital public that the buildings were "closed." A first example to the Court of divided operational authority over the United States Capitol Complex, with attendant uncertainty over what is the standard, who is enforcing what standard; who has controlling authority, who may override approval of access from other parties.

Defendants' Counsel reports what is readily available at the website for the Capitol Police for Americans wishing to visit the Capitol and access congressional offices; web page: https://www.uscp.gov/visiting-capitol-hill/official-business/official-business-building-access-hours (accessed March 15, 2023). ECF No 6-1 at 5. Plaintiff asks the Court to fully consider the words on that public webpage; four words: "Open to the public." That's it. I have no idea what

that means and I suggest neither does the Court. The full sentence, if we can call it that, reads: House Office Buildings (Cannon, Ford, Longworth, Rayburn) [next line] Open to the public Monday – Friday, 7:00 a.m. – 7:00 p.m. [space/next line] Senate Office Buildings (Dirksen, Hart, Russell) Open to the public Monday – Friday, 7:00 a.m. – 7:00 p.m. Defendants' Counsel states: "And because Plaintiff may now freely visit the Congressional Office Buildings during "normal working hours"—the full relief he sought in this lawsuit—Plaintiff's First Amendment claim is now moot." ECF No. 6-1 at 5.

Defendants' Counsel represents to the Plaintiff and the Court the current status of access into House Office Buildings. ECF No. 6-2 at 1. This exhibit is an order by Defendant William J Walker (no longer serving as Sergeant at Arms for the United States House) of December 29, 2022, lifting COVID-19 restricts. There is only Section 1 to this order. Plaintiff would direct the Court to the second-and-final sentence: "Restrictions that existed prior to such time period are unaffected." What are those "unaffected" restrictions? Where are they? Defendants and counsel are enamored with public webpages: What do the public webpages disclose regarding any "restrictions" for the House Office Buildings? Nothing. The United States House of Representatives has a webpage for its Sergeant at Arms: https://www.house.gov/the-house-explained/officers-and-organizations/sergeant-at-arms. *See* Ex. 1. There is not one word or sentence there to guide Plaintiff, the Court, or any citizen to the rules the Sergeant at Arms for the United States House of Representatives has "behind the curtain," regarding their version of: "public access."

Defendants' Counsel represents to the Plaintiff and the Court the current status of access into Senate Office Buildings. ECF No. 6-3 at 1. This exhibit is an order by Defendant Karen H. Gibson (current Sergeant at Arms for the United States Senate) of January 3, 2023, lifting COVID-19 restricts. There are two sections. Section 1 concludes "be reopened for regular business, consistent with the necessary operational and security precautions that must be taken to ensure the

safety and security of Senators, staff, and visitors." What do those words mean, "consistent with . . . the safety and security"? What restrictions, or considerations, or avenue for citizen complaint or accommodation run with those words? We have no idea. The United States Senate has a web page for its Sergeant at Arms: https://www.senate.gov/reference/office/ sergeant_at_arms.htm. *See* Ex. 2. There is a glaring consistency between both Sergeant-at-arms webpages: not one word or sentence to guide the Plaintiff or the Court what rules they have "behind the curtain." Section 2 by the Senate Sergeant-at-arms clearly states: "For purposes of this section (meaning 2), the Chief of the United States Capitol Police is hereby designated as the person lawfully in charge of Senate Office Buildings for the purposes of Section 1 of this regulation."

Plaintiff's suit contends operational and institutional barriers to  the Plaintiff's in-person access into congressional offices buildings on October 27, 2021, on Capitol Hill. Further, that Plaintiff's telephone calls of October 2022 gave evidence of a United States Capitol Complex "partially locked down," operating with inconsistent rules because of COVID-19 restrictions— along other, not publicly disclosed "restrictions to public access" by ordinary, unapproved citizens, as clearly stated by Plaintiff. Compl. At 5. Plaintiff suggests to the Court that the arguments and documentary evidence submitted by Defendants' Counsel in Defendants' Motion to Dismiss have not conclusively proven that there no longer exists any continuing, intentional bias and barriers against citizens and their free speech rights, including access to the congressional offices of the Congress of the United States of America.

Plaintiff asks the Court: Who is in charge of those six congressional office buildings? Who controls their access? Who is responsible for the written rules and procedures for public access, with those publicly available guidelines showing beyond a shadow of doubt, or what might be challenged in court, that the reasonable and constitutionally protected citizen access is given the highest lawful consideration under the Constitution and the United States Code by

members of Congress, staffers, Capitol Police, and other building personnel? Where are those written rules? What do they say? The system as currently operating for the United States Capitol Complex suggests that the Sergeants-at-arms, or the chief and officers of the Capitol Police, or Members of Congress or congressional staffers can point to someone else, in an intentionally vague line of command, for why any one citizen might or might not be granted: how much access to these Congressional Office Buildings during normal working hours? The House Sergeant-at-arms offers no public notice for any of its "rules of public access." The Senate Sergeant-at-arms gives up the ghost, suggesting that while Senate considerations guide public access, as stated in Section 1, she then places all operational details and case-by-case rulings under the Chief of the Capitol Police, in Section 2. So the Senate can write nice rules about public access, if they have such, and Plaintiff and the Court know not what those are, but then the Capitol Police are the ultimate judge-and-jury. Defendants' Counsel lists the webpage for the Capitol Police that says: "Open to the public"; where is the rejoinder: Have a nice day. ECF No. 6-1 at 5. A further review of the website for the Capitol Police shows no publicly available and detailed operating rules and procedures for the Capitol Police regarding public access—along with any restrictions or limitations. By Defendants' current webpages and Defendants' Counsels' representations, it appears to the Plaintiff that The United States Senate office buildings might have some rules (that we cannot see), but that the Senate will defer to the Chief of the Capitol Police, who appears to have no rules, or none that are publicly acknowledged and disclosed. To put this in ordinary language, that carefully constructed operational circle means that they—senators, their staff, building staff, and the Capitol Police —can do whatever they want. And, if they so choose, they can point to the other party and its non-public prerogatives of control for their version of public access by citizens.

Plaintiff sues the four caucus leaders of the United States Congress, seeking access into

the United States Capitol Complex. Plaintiff includes those public official most immediately in charge of public access to the office buildings of Congress: the Sergeants-at-Arms and the Chief of the Capitol Police. But: Who's really in charge? What are their rules? Congressional leaders have installed a clever system where they do not appear to be directly responsible for access to their buildings, but can point to their underlings who bear functional responsibilities. Their underlings suggest that "we're open for business," per their public web pages, while providing no public proof or specificity upon those pages for what those words mean. Instead, in response to this specific lawsuit, Defendants' Counsel has given us no language or rules or citations or webpages to rely upon to answer these troubling questions. We have an intentional, convoluted circle of responsibility that bears a striking resemblance to the failure by congressional leaders and their police force to protect the formal congressional proceeding of January 6, 2021. The nation is 26 months down the road from that sordid moment in our nation's history, but the then-current speaker of the House and the then-current Senate majority leader—those members of Congress most responsible for the protection of their own buildings —have not been publicly heard from, addressing their responsibilities and failures for the events of that day. No accountability for congressional leaders, since that January 2021 day.

Defendants' Counsel, on behalf of congressional leaders, reveals much of his personal and professional thoughts (perhaps theirs, as well) about civil liberties and citizen access to members of Congress with Footnote 1. ECF No. 6-1 at 6. Defendants' Counsel suggests contacting member of Congress, "mailing, emailing, or faxing . . . or . . . messages communicated through members personal online webpages . . . ." It misses the point of the personal contact in Washington Plaintiff seeks, but represents well lawyerly advice for members of Congress for how to have contact from citizens without those citizens having any demonstrable proof, perhaps for future publication or court actions at a later date. Plaintiff has

called congressional offices; personally delivered documents to local congressional offices. Plaintiff, by USPS Certified Mail, wrote to 33 United States senators on February 14, 2023. *See* Ex. 3. If USPS tracking information is truthful, 24 senators received this letter/packet: Brown, Manchin, Gillibrand, Whitehouse, Blackburn, Carper, Menendez, Casey, Rick Scott, Sanders, King, Kaine, Romney, Rosen, Hirono, Tester, Warren, Feinstein, Hawley, Klobuchar, Stabenow, Wicker, Barrasso, and Cantell—with not one reply. So much for Defendants' Counsels' first footnote about writing to members of Congress. ECF No. 6-1 at 6.

Plaintiff's letter and documents to senators directly challenged these specific members of Congress over their appropriation failures, along with the $17 trillion lie of the non-longer functioning Debt limit of the nation. *See* Ex. 4. Plaintiff specifically requested a Hall Pass to be signed by senators, providing citizen-journalist-activist John Paul Durbin access into their office buildings. *See* Ex. 5. Not one senator has replied. Plaintiff has included his six-page monograph on the issue of this citizen and his questions about his First Amendment constitutional rights. *See* Ex. 6. What's most troubling by this mailing was not a formal rejection by senators, but an unwillingness to even brook the debate. Or reply. Even as their leaders are currently being sued.

Defendants' Counsels' Footnote 1 concludes with a very telling word: constituents. ECF 6-1 at 6. Plaintiff raised this exact issue with senators in his February 14, 2023, letter, two weeks before the filing Defendants' Counsel. The Plaintiff is an Ohio resident. I have one representative and two senators. Does that mean that my ability to call on members of Congress is restricted to-and-by those three members? To whom, to what office, to what officer or public official would I address this question to, in advance? Or, the better point: Are there any formal, written "restrictions or limitations" by congressional leaders, by members of Congress, by the Sergeants-at-arms, or the chief and offices of the Capitol Police that claim some restrictions on this ground? I have formally put that issue to these 33 United States senators and have been met with silence.

I put before the Court the questions of my "basket of First Amendment rights" that are considered in my monograph: My First Amendment rights. This six-page Socratic exercise was not intended as a showy and chaotic piece of theater for the senators, but as the specific and interconnected issues of this Plaintiff, my rights, and my access to the United States Capitol Office Complex.

## PLAINTIFF REJECTS DEFANDANDTS' COUNSEL'S ARGUMENT

### Plaintiff's First Amendment Claim Is Now Moot.

By Defendants' Counsels' own statements and exhibits, along with Plaintiff's already six pages of reply, this Complaint pending before the Court shows a live case with the "appearance" of current and future harm and adverse effects for the Plaintiff for his access into the United States Capitol Complex. Plaintiff is forced to use the word "appearance" in the preceding sentence, because the Defendants—by their public proclamations, their public webpages, and their Counsels' own arguments and exhibits—have not shown a public record that erases any or all doubts regarding Plaintiff's future access into the congressional office complex.

Plaintiff now takes his First Amendment questions from Ex. 6, and addresses them directly to the Court, to the Defendants and their Counsel.

**Where is the line? Where are the lines? Which line? Who gets to say how and where I have the use of my First Amendment, constitutional rights, in the office buildings of the Congress of the United States of America:** The leaders of Congress? The sergeants at arms? The chief of the Capitol Police and his legal counsel?

I claim a First Amendment constitutional right, in March, April or May (or the remaining months of the year), to come to Washington. To be granted entrance into the public office buildings of the Congress of the United States of America. To wander the halls. To go to

congressional offices. To leave a piece of correspondence. To pray aloud. Maybe I wish to speak with staffers. As a citizen, perhaps I wish to claim that press right in the Constitution as my own; to ask nosy questions; to leave written questions for members of Congress; leave a copy of my current reporting, asking for written response if members choose to do so. John Paul Durbin, citizen, with a right to peaceably assemble in these public buildings. And, in my case, I might bring with me part-or-all of my formal: Petition For Redress—to Congress.

Plaintiff then stated directly to senators: "This portion of the packet, "My First Amendment rights," is not merely a piece of written speech. These are not rhetorical questions, but specific requests. Asking you to respond. Tell me what you see are your rights, duties, and prerogatives, versus these humble requests of a citizen asking for his constitutional rights to be honored. By you. In writing. In advance. With specificity. It all seems to me to be fairly reasonable. To put these questions, these requests, to a United States senator. Most especially, when it's a citizen-journalist-activist who's asking. A citizen, currently suing the leaders of the 117th Congress. A citizen who wishes to present his Petition For Redress directly and personally to the offices of the members of the United States Congress."


**LET'S GO THROUGH MY FIRST AMENMENT RIGHTS**

**RELIGION.** Do I have a right to silently pray in the office buildings of Congress? Do I have the right to offer a simple, public, vocal prayer in the office buildings of Congress? Do I have the right to come into the office buildings of Congress, for the sole, stated purpose of praying? For five minutes? Five hours? Am I allowed to pray in each of the six office buildings? Am I allowed in only once, to practice my religious beliefs in these public buildings? Once a week? Once a month? Is there an arbitrariness to the discretionary powers of staff and police to restrict my religious practice in these public buildings? Where are your

written rules, regarding the constitutional, religious rights I claim to go into offices of members of Congress to offer a simple prayer? A public, vocal prayer for myself, in that moment, that I might be a humble servant of my maker; that I might bring my grace and peace and devotion, not only to my creator, but my devotion to my nation; as I ask for divine guidance for myself as I speak to the staff of the members of the United States Congress, and divine guidance for them, as they respond. Divine guidance, for the nation.

**SPEECH.** Do I have the right to publicly speak to staff of members of Congress? In person. In the lobby of each office building? In the corridors and hallways? Do I have a right to have that opportunity for speech in receptionist rooms? Do I have that right, only if any one or other members of Congress chooses? Do I have that right, but only if granted by "my members of Congress?" Does that mean that one representative and two United States senators are the only people upon whom—you say—I have a right to ask and interact? Do I have the right to speak kindly and courteously to congressional staffers and members of Congress? Do I have the right to raise my voice? Am I allowed to contradict what is said to me by staffers and members of Congress? Are my written papers a form of speech? Do I have the right to personally deliver my "written speech" to members of Congress, or at least to their staffers? At the receptionist desk for a member of Congress? Is this an unconditional right? Do I have to ask in advance, to exercise that right? Am I forced to do that by phone (and have no proof)? May I ask for approval in writing? How much notice can I get, from the day I write and ask, until I choose to use it? How much leeway might I get, traveling from Ohio, to come within a couple weeks, or one month, or might it be an open-ended invitation? Am I allowed into the buildings on an arbitrary, case-by-case basis? Does my constitutional right of speech allow for me to go to only one office per day? One office per week? One office per month? Per year? And if I don't like it, I'll have to take it to court? That I travel over 400 miles from Ohio to Washington doesn't matter: I get one entrance

per week? Per month? How convenient for members of Congress. How many pages of written speech am I allowed to bring? What I can carry under my arm? Or, if I am allowed in to see a lot of members, am I allowed to bring or use a cart to transport hundreds or thousands of pages of text throughout the buildings? Is that unreasonable? Who gets to say? What are the guidelines? Is there an appeal process? Where you always win?

**PRESS: "YOURS."** Has the credentialed, congressional press covering Congress done a good job? Are they fair? Are they thorough? Do they ask good questions? Tough questions? Have they reported all that there is to know—that Americans need to know? About anything? Everything? About the Debt limit? Do you know what their credentialing process is? Are you aware that the journalists already covering Congress control that process? Does that strike you as odd? Insular? Restrictive? Unconstitutional? Something someone might rather easily challenge in federal court. Or challenge with great difficulty, in a suit against the Congress, for this oddly abusive and restrictive guild practice by the buddies of Congress in the press, operating with their consent. I can't be credentialed except by those correspondents already in the buildings, who have been providing the members of Congress with the comfortable coverage that member of Congress have become accustomed to. Is the "formal," "official," approved, recognized Washington congressional press corps: the first-and-last word for Congress, as it pretends that it has not placed any unconstitutional restrictions or barriers on the coverage of Congress by a free and fair and aggressive—and independent press?

**PRESS: MY CONSTITUTIONAL RIGHT?** Am delusional to think that I have a constitutional right to claim status as a member of the free press? Do I have a constitutional right to be in congressional buildings, every bit as much as the pretend journalists members of Congress like so much? Do I have the right to a badge? A photo ID? The easy access accorded these "institutional, official members" of the press, to travel throughout the buildings, to come

and go as I please? Do I, John Paul Durbin, have a right to call myself a member of the free press? A right to bring written questions with me, to leave with receptionists? Do I have the right to ask unpleasant questions? Do I have the right to leave behind my reporting, that serves as the basis for the uncomfortable questions that I am pressing members to answer? Am I refused membership in the "official press club" unless and until I affiliate with any of the approved corporations and entities already covering Congress? Is that a restriction that will hold up in the federal court? Am I ineligible for a press pass until I publish my 800-page book? Will that qualify me for a badge, a photo ID, and easy transit and access through the Capitol Hill Office Complex? If my lawsuit(s), and blogging, and certified letters, and general decorum displeases members of Congress, am I out of my mind expecting them to yield? Ever? Only in court?

**PEACEABLE ASSEMBLY.** I think that means: Am I allowed in the buildings? Are those buildings wholly controlled by Congress? Do Congress, itself, get the exclusive say regarding access? Are members able to hide behind leaders, staffers, the Capitol Police, and let everyone else take the heat . . . so that no single member is responsible for letting John Paul Durbin into the building (and heaven help you, what he might do?). Is this right the "magic key" for my use of the other-four rights? Might members say that I have all these rights, but, but, but, but: sorry, not the way John Paul Durbin wants to use them. Can members say that? Refuse to say? Refuse to answer? Not reply to me in writing? Isn't it funny. Members of Congress, or a court, can take those other, four rights, and say the most wonderful things about them, then refuse my access into the buildings. I'm free to go stand on a Washington street corner and scream to my heart's content. I'm free to bring a sign. Friends. March. Sing. Dance. Parade, if we get a permit. We can pray. Aloud. Really loud. We can sing religious songs. We can have a religious moment, then a bunch of speeches. We can claim to be the needed press, to report the stories we want told about a corrupt company town and a dishonest Congress. And members of Congress,

or a court may say, of that street corner event of ours: not only was "that" my/our right of petition for a redress of grievances, but THAT WAS MY/OUR RIGHT OF PEACEABLE ASSEMBLY. Funny, how this works. We pay for the buildings. We pay congressional salaries. We pay for everyone who works in the buildings, who are on the public payroll. We own it all, except for those inconvenient and uncomfortable rights we might want to claim, to trouble the comfortable, the insular, the stuck-and-staid Congress that doesn't give a damn what the American people want. No senator wants any self-described citizen-journalist-activist, who's already suing congressional leaders: in the buildings! Is it any wonder that nothing works well, in Washington. Most times, I'm a reasonable person. But reasonable people don't get the job done. Reasonable people aren't getting anyone in Congress, or the extended family of guardians at Capitol Hill: to let in someone who dares to ask so loudly for his constitutional rights. Go to court, if you want those honored. And so I have. But I'm not waiting on that lawsuit. My rights aren't tied to some date in the past, some past events of minor or major importance. I have these right: today. Tomorrow. Next week and next month. And I will not rest until I am given my day on Capitol Hill. And if I must first win that right in court: so be it.

     **PETITION FOR A REDRESS OF GRIEVANCES.** Nobody knows what this right is. What it can do. How to use it. What it might look like. How it might begin. Or progress. How it could be as important as the other four rights. Is the right of petition, strictly speaking, only applicable in writing? Who gets to say? How might the document look? How many pages? Is it "speech" by another name or can there be more to it than that? Who says? Perhaps those elements are defined by whomever claims this right. Whomever prepares a document or an event and calls it a "petition for a redress of grievances." Ah, but then: What? How is it presented? To whom? In what manner? But, for an act of speaking truth to power: What if the powerful don't want the message? Won't let the petitioner in? Won't let the petitioner in: Where? Where the

powerful are. Where the powerful work. Where the powerful hold power. Use their powers. And abuse them. In and at the place of their formal public actions and their regular ministerial duties. Don't tell me that I have the right of petition, but I must come, hat-in-hand, only to a local office. I'm free to mail it as I choose. Members of Congress think we're dumb. We have been. Members do not want a public act of petition, defiance, dispute, protest, or speech: If members of Congress can't control it; limit it; limit its exposure, to deny the act of petition its chance at public spectacle, thereby eliminating its capacity to inform others. I've called congressional offices. I've walked into congressional offices. I've come to congressional office buildings in Washington. I'm wise to their game. And why it is the way that it is. I have finally figured out the path that I must travel if I wish to have my rights honored. I know that the last thing members of Congress want is to grant me permission. In writing. Into their buildings. To deliver my formal Petition For Redress. I know why they resist. As I know why I demand of myself that I must push on. Legally. Peacefully. Reasonably respectfully. Without end.

**I HAVE A BASKET OF THESE FIVE, FIRST AMENDMENT RIGHTS.** If I want in congressional office buildings for a public-private prayerful act, do I have that right? If I want in to those buildings to speak to staff, as a citizen, do I have that right? If, on Tuesday, I want to go to a few offices to speak, to pray, but leave no paperwork, do I have that right? But, should I choose to return on Thursday, to pray; speak to people in the hallways; to go several offices, as that citizen, to speak out, to ask questions, do I have that right? Then, moments later, claim my status as a journalist, do I have that right? Am I playing a game with these questions, or am hoping to use my rights to their fullest possible extent? Up to some line, up to the call and restrictions of officials in congressional office buildings? Out of an abundance of respect for my constitutional rights, shouldn't I be accorded all reasonable accommodations?

Almost too many questions. But not one too many. Each question is an important, serious, crucial question to this Plaintiff. Regarding my Constitution. My rights. My legal recourse to the courts of the nation, as this Plaintiff seeks to ensure my legal, easy, and unfettered reasonable access into congressional office buildings during normal business hours. Without unnecessary or undue burdens. Plaintiff suggests to the Court that the current standard for public access, what the Congress, its leaders, members, its Sergeants-at-arms, and the Capitol Police have in place, either by rule and regulation, or their non-public prerogatives—may be, and we do not know, today, because of the lack of disclosure by the Defendants' and their Counsel—may not respect, protect, and allow this citizen, this Plaintiff, the constitutionally protected, reasonable access that he seeks. Plaintiff suggests to the court his "legal, easy, and unfettered reasonable access" cannot be determined by the "lower bar" of the current practice by these public officials, rules acceptable to all other Americans who have not and may never go to Washington to press their case and assert their personal, constitutional rights. Of speech. Assembly. Access into these buildings.

As Defendants' Counsel asserted to the Court, "For courts to have jurisdiction over a matter under Article III of the U.S. Constitution, "an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." ECF No. 6-1 at 9. Plaintiff's Complaint asserts past non-public rules and procedures were part of the excuses presented to the Plaintiff to his verbal queries regarding access to congressional office buildings. The only thing that has changed, from October 2021, and October 2022, is the elimination of the COVID-19 restrictions. Defendants have no publicly available information with any level of specificity as to public access. With the order by the Senate Sergeant-at-arms, any citizen wondering about access will immediately understand that the ultimate call on that resides with the Chief of the Capitol Police. Per that website, were are told that these buildings are now: "Open to the public." Those four words, with an ocean of silence, with who knows what rules and procedures hiding "behind

the curtain," gives this Plaintiff pause what those four words mean, matched against my parade of important questions. Specific questions regarding specific access. No customer would purchase anything, based on a smile and a verbal pledge: we'll take anything back at any time. No customer or partner or investor or citizens would sign a contract based on four words, regardless of the four words used.

As Defendants' Counsel asserted to the Court, "The plaintiff has the burden of making 'a reasonable showing that he will again be subjected to the alleged illegality.'" ECF No. 6-1 at 12. That showing of current, potential illegality is right here, in the body of this response. The United States Capitol Office Complex has a convoluted (when they choose), circular or confusing lines of authority and responsibility for anything and everything there. Congress couldn't, didn't, protect itself on January 6, 2021. As of March 2023, the nation has not (and likely never will) heard directly from speaker of the House Nancy Pelosi and then-Senate majority leader Mitch McConnell regarding those events . That pattern is conveniently repeated by senators, congressional leaders, the Sergeants-at-arms, and the Chief (and his website) of the Capitol Police: today. Again, I ask the Court: Who's in charge of these buildings? Who gets to say what the rules are? What are those rules? Where are they? Defendants' Counsel has made a better presentation to the Court than the Plaintiff ever would, for the convoluted, not-specific, questionable current practices for public access—for this Plaintiff. Contrary to Defendants' Counsel's assertion that the "Plaintiff cannot show that he will again be subjected to the alleged illegality, Defendants' Counsel has presented that specific (non-specific) evidence that he did not see, that the Court may choose to not see, either. That the obtuse, non-public, arbitrary policies and rules of the Capitol Police, the House and Senate Sergeants-at-Arms are, simultaneously, publicly on display, and yet you or the Plaintiff cannot point to the rules "behind the curtain."

Plaintiff mailed to each of 33 United States senators a 47 page letter/packet, on February 15, 2023. Only 24 were delivered, 2 returned, 2 sitting in post offices unclaimed, and 5 that simply disappeared. *See* Ex. 3. When Plaintiff went to the post office that day, those 33 parcels filled a 13 X 13 X 8 inch box. What if Plaintiff's takeaway from that mailing and the non-response by those United States senators pushes him to want go to Washington, to Capitol Hill, with a 150 page packet to all 100 senators. Is that a reasonable desire by a citizen for personal and verifiable of a formal delivery of my written speech—perhaps to include a Petition For Redress, in whole or in part—to members of Congress? If this Complaint is dismissed, will the Plaintiff be able to carry out that civic, constitutional act? Who says? Where does it say that? Who has represented to the Plaintiff or to the Court: that would be no problem?

Why haven't the Defendants or their Counsel presented a written, specific document to assure the Plaintiff—not the rest of Americans, not the boilerplate, vacuous language on public websites, not the empty phrase: Open to the public—his access to all buildings, for all public hours, for as many days, weeks, months, offices and moments of contact that he seeks and deems reasonable? Do the Defendants and their Counsel want an orderly, legally binding public agreement, or are they rushing to Court to a hasty judgment before fully hearing all parties out? It's clear to this Plaintiff that no one else involved in this case has any idea or experience what it's like trying to speak truth to power, to the United States Congress. In Washington. On Capitol Hill. At those supposedly public buildings. With free and fair and easy access. Without exception.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully request that the Court denies Defendants' Motion To Dismiss. This case is still "live," and the Court still has jurisdiction.

Dated March, 16, 2023                    Respectfully submitted,

                                         JOHN PAUL DURBIN

                                         /s/ John Paul Durbin
                                         P.O. Box 66
                                         Walhonding, OH 43843
                                         (571) 250-0112
                                         reverse-00-runtime@icloud.com

— **17** —

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served upon Defendants'

Counsel, via Certifed Mail USPS, this 16th day of March, 2023, at the following address:


Stephen Degenaro
Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530
(202) 252-7229
Stephen.Degenaro@usdoj.gov


/s/ John Paul Durbin
John Paul Durbin
Plaintiff

— 18 —