UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN PAUL DURBIN**, <br>     Plaintiff, <br><br> v. <br><br> **NANCY PATRICIA PELOSI,** *et al.*, <br>     Defendants. | Case No. 22-cv-3222 (CRC) |

## MEMORANDUM OPINION

During 2021 and 2022, Plaintiff John Paul Durbin alleges that he attempted to access several congressional office buildings but was denied entry due to temporary COVID-19 restrictions. Durbin responded by filing this *pro se* action in October 2022 against congressional leadership, the House and Senate Sergeants at Arms, and the Chief of Capitol Police contending that these restrictions violated his First Amendment rights and requesting injunctive relief. Early in 2023, however, the House and Senate Sergeants at Arms rescinded the COVID-19 restrictions and re-opened Capitol buildings to the public. Because these voluntary recissions cure Durbin's only cognizable injury and because it is entirely speculative that he will be denied access to congressional office buildings in the future, the Court grants the Defendants' motion to dismiss this case as moot.

**I.     Background**

Durbin is a "self-employed, unaffiliated journalist" from Ohio. Compl. at 15. Dismayed with national politics, Durbin sought to travel to the United States Capitol to present members of Congress with petitions for redress on a myriad of grievances ranging from Congress's failure to pass annual appropriations bills to its purported violation of the debt limit. Id. at 3, 7–8. But these efforts were allegedly foiled when Durbin was refused access to several congressional

office buildings in October 2021 based on "ongoing Covid-19" and "post-January 6th concerns." Id. at 5. The following October, Durbin renewed his efforts by calling the Capitol Visitors Center, but he was told that "[n]o citizens not on tours or lacking previously scheduled access[] with members of Congress [were being] permitted into the Capitol" at that time. Id. Durbin visited the U.S. Capitol Police website the following Monday and found a banner on the homepage reading: "Due to the ongoing COVID-19 pandemic, the U.S. Capitol Building and Congressional Office Buildings remain closed to the public." Id. When he re-dialed the Capitol Visitors Center two days later, Durbin was again informed that the public was not currently permitted to visit congressional office buildings without prior approval. Id.

The next day, Durbin filed this lawsuit claiming that these restrictions on accessing the Capitol violated his First Amendment rights. Id. at 3. In his request for relief, Durbin asked that the Court "instruct the Capitol Police force, its officers and administrative personnel, along with any other congressional staffers or officers, to make immediate, written accommodations so that the Plaintiff may travel from Ohio, confident in his access to any and all congressional office[] buildings, halls and corridors, during normal working hours." Id. at 15. Durbin also requested "credentials from the Capitol Police for a permanent badge-of-access, currently available to credentialed members of the corporate media," contending that he is "unable to comply with the ordinary, burdensome requirements for credentials for 'approved' corporate media, owing to his status as an unknown and unaffiliated citizen-advocate-journalist." Id.

In late December, the relevant circumstances changed when both the House and Senate Sergeants at Arms lifted the existing COVID-19 health and safety restrictions on Capitol access. See Mot. Dismiss at 1. The "order regarding reopening of Senate Office Buildings" began by stating that "the Senate Office Buildings have remained temporarily closed since the order of the

Sergeant at Arms of the Senate on May 16, 2020." Mot. Dismiss, Ex. B at 1. It then declared that, effective January 3, 2023, "the Senate Office Buildings shall . . . be reopened for regular business, consistent with the necessary operational and security precautions that must be taken to ensure the safety and security of Senators, staff, and visitors" and specified that "[a]ll prior or other orders that are inconsistent with this order are hereby rescinded and revoked." Id. The "order rescinding restrictions concerning access to the House Office Buildings" similarly announced that "all restrictions concerning access to the House Office Buildings promulgated from March 2020 to December 2022 are hereby rescinded" as of January 3 at 12:01 a.m. Mot. Dismiss, Ex. A.

Accordingly, the Defendants in this action responded to Durbin's complaint two months later by moving to dismiss the case as moot under Federal Rule of Civil Procedure 12(b)(1). The Court now addresses that motion.

## II.     Legal Standards

A party may move under Rule 12(b)(1) to dismiss an action for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). A motion to dismiss as moot "is properly brought under Rule 12(b)(1) because mootness itself deprives the court of jurisdiction." Indian River Cnty. v. Rogoff, 254 F. Supp. 3d 15, 18 (D.D.C. 2017). "Unlike some jurisdictional questions such as standing or ripeness, the party asserting mootness . . . bears the initial heavy burden of establishing that the case is moot." Atlas Brew Works, LLC v. Barr, 391 F. Supp. 3d 6, 11 (D.D.C. 2019) (citation and quotation marks omitted). When evaluating a motion to dismiss, "the Court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." Indian River Cnty., 254 F. Supp. 3d at 18 (internal quotation marks omitted). "But because the Court has an 'affirmative

obligation to ensure that it is acting within the scope of its jurisdictional authority,'" id. (quoting Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)), the "[p]laintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion" for failure to state a claim, id. (quoting Delta Air Lines, Inc. v. Export–Import Bank of U.S., 85 F. Supp. 3d 250, 259 (D.D.C. 2015)).  In doing so, a court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Id. (internal quotation marks omitted).

Additionally, a court "may *sua sponte* dismiss a claim . . . where it is patently obvious that the plaintiff cannot possibly prevail based on the facts alleged in the complaint." Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 127 (D.C. Cir. 2012) (internal quotation marks omitted). This is especially true when a court believes that the plaintiff lacks standing to pursue his or her case.  See Lee's Summit v. Surface Transp. Bd., 231 F.3d 39, 41 (D.C. Cir. 2000) ("When there is doubt about a party's constitutional standing, the court must resolve the doubt, *sua sponte* if need be.").

Although filings by *pro se* litigants are "held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007), "the complaint must still present a claim on which the Court can grant relief," Smith v. Scalia, 44 F. Supp. 3d 28, 36 (D.D.C. 2014) (internal quotation marks omitted).  And, importantly here, "the requirement that courts liberally interpret *pro se* pleadings does not dispense with the constitutional requirement of standing."  Strunk v. Obama, 880 F. Supp. 2d 1, 3 (D.D.C. 2011).

### III.     Analysis

Durbin's First Amendment claim is moot because he can now visit congressional office buildings during normal business hours unencumbered by the prior health and safety restrictions,

4

and no exception to mootness applies that would allow the Court to consider this no-longer live case or controversy. To the extent that Durbin attempts to rewrite his complaint to broaden his objections beyond the temporary COVID-19 restrictions, these efforts fail because his claim of future injury based on these ill-defined additional policies is too speculative to serve as the basis for Article III standing. Similarly, although Defendants' motion to dismiss does not address the matter, the Court finds that it must dismiss Durbin's request for media credentials because he has not shown he would suffer a concrete injury traceable to the Defendants in the absence of this extraordinary relief.

    a. <u>Mootness</u>

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." <u>Iron Arrow Honor Soc'y v. Heckler</u>, 464 U.S. 67, 70 (1983). The Constitution's case or controversy requirement "means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998) (citation and quotation marks omitted). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." <u>Already, LLC v. Nike, Inc.</u>, 568 U.S. 85, 91 (2013) (citation and quotation marks omitted). Even if a case is live at the time a plaintiff files the complaint, "[a]n intervening event may render a claim moot if there is no reasonable expectation that the conduct will recur." <u>Leonard v. U.S. Dep't of Defense</u>, 38 F. Supp. 3d 99, 104 (D.D.C. 2014) (citing <u>Pharmachemie B.V. v. Barr Labs., Inc.</u>, 276 F.3d 627, 631 (D.C. Cir. 2002)). This is one of those cases.

The Sergeants at Arms' revocation of the COVID-19 restrictions in December 2022 granted Durbin the relief he sought. Durbin has alleged that he was denied access to the Capitol buildings in 2021 and 2022 because—as the Capitol Visiting Center and the Capitol Police website made clear—these buildings had been closed to the public due to the pandemic since May 2020. See Compl. at 5; Mot. Dismiss, Ex. B at 1. Durbin complained that these policies denied him "reasonable access to the public's buildings," Compl. at 9, and requested that he be granted access to these facilities "during normal working hours," id. at 15. That is exactly the effect of the Sergeants at Arms' orders, which revoked the prior protocols and re-opened the Capitol buildings to the public during regular business hours. See Mot. Dismiss at 4; id., Exs. 1–2. As posted on the Capitol Police website, the Congressional Office Buildings are now "[o]pen to the public Monday [through] Friday" from 7:30 a.m. until 7:00 p.m. for the House offices and until 8:00 p.m. for the Senate buildings. Visiting Capitol Hill: Building Access & Hours, U.S. Capitol Police, https://www.uscp.gov/visiting-capitol-hill/visitor-information/building-access-hours (last visited Sept. 11, 2023). No further injunctive relief is required to provide Durbin the access that he originally sought, rendering this case moot.

An otherwise moot case may be salvaged if one of the exceptions to mootness applies. Although Durbin does not attempt to show that an exception to mootness saves his case, the Defendants point to two possible exceptions but insist that neither applies here: (1) voluntary cessation and (2) capable of repetition yet evading review. See Mot. Dismiss at 6–9. The Court agrees with the Defendants' assessment.

Under the voluntary cessation exception to mootness, a defendant's own decision to stop the challenged conduct will not deprive a court of the power to hear the case unless "(1) there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events

6

have completely and irrevocably eradicated the effects of the alleged violation." Larsen v. U.S. Navy, 525 F.3d 1, 4 (D.C. Cir. 2008) (citations and quotation marks omitted). Both conditions are satisfied here. First, there is no reasonable expectation that the House and Senate Sergeants at Arms will reimplement health and safety restrictions that were promulgated at the height of an unprecedented, once-in-a-generation global pandemic. There is also no reason to question the Government's commitment to keeping these buildings open to the public going forward. See, e.g., Citizens for Resp. & Ethics in Wash. v. U.S. S.E.C., 858 F. Supp. 2d 51, 62 (D.D.C. 2012) (noting there is "less concern about the recurrence" when the defendant is a government actor). Thus, even if there are no structural impediments to the Sergeants at Arms reimposing the prior restrictions, the mere possibility they may do so despite the dramatically changed health conditions is far too speculative to keep this case alive. See id.; Brach v. Newsom, 38 F.4th 6, 13 (9th Cir. 2022) (holding that California had shown that its "current order opening schools" after COVID-19 closures was "not a temporary move to sidestep litigation" because it was based on changed circumstances). Second, intervening events have eradicated the prior restrictions that had prevented Durbin from accessing congressional office buildings, as the Sergeants at Arms have re-opened the doors to the public. This exception therefore does not apply.

Nor does the capable of repetition yet evading review exception. This narrow exception arises where "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." Clarke v. United States, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc) (cleaned up). Durbin has not even attempted to meet his burden of showing that these requirements are met, see Del Monte Fresh Produce Co. v. United States, 570 F.3d 316, 322 (D.C. Cir. 2009), and any effort to do so would be futile. On the first requirement, the

D.C. Circuit generally has held that "agency actions of less than two years' duration cannot be fully litigated prior to cessation or expiration."  Id.  The COVID-19 restrictions at the Capitol were in place from May 2020 to January 2023, surpassing that two-year threshold.  See Mot. Dismiss, Ex. 2 at 1.  Regarding the second requirement, consistent with the analysis above, there is no reasonable expectation the Defendants will revive the prior restrictions now that the underlying health concerns are worlds apart from where they were in May 2020.  See Murphy v. Hunt, 455 U.S. 478, 482 (1982) (noting that the "mere physical or theoretical possibility" that the challenged action will recur is insufficient).

Thus, as other courts have done in many challenges to revoked COVID-19 policies, the Court concludes that no mootness exception applies.  See, e.g., Nepal v. U.S. Dep't of State, 602 F. Supp. 3d 115, 129 (D.D.C. 2022) (finding no reasonable expectation that the Department of State would re-implement the challenged policies responding to a "once-in-a-generation viral pandemic"); Newkirk v. Superintendent Huntingdon SCI, No. 21-1739, 2023 WL 4861767, at *1 (3d Cir. July 31, 2023) (finding a case moot where "it is absolutely clear that the same pandemic conditions we faced in 2020-21 are no longer extant" (cleaned up)).

      b.  Additional Policies

Seeking to avoid dismissal, Durbin contends in his opposition that his "[c]omplaint was never solely anchored upon COVID-19 restrictions."  Opp'n at 1.  He maintains that, despite removal of those policies, other ambiguous and hidden restrictions remain in place that may limit his access to the Capitol buildings, id. at 2–3, and he speculates that these still-in-place policies "may not respect, protect, and allow [him] . . . the constitutionally protected, reasonable access that he seeks," id. at 14.

The Court does not doubt that some restrictions on accessing Capitol buildings persist, as the House Sergeant at Arms' order makes this point perfectly clear. See Mot. Dismiss, Ex. A ("Restrictions that existed prior to [March 2020] are unaffected."). But the simple fact of these policies' existence does not give Durbin standing to challenge them. Instead, Durbin must show that he is likely to suffer a concrete "invasion of a legally protected interest" that is "actual or imminent" and not merely "conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citation and quotation marks omitted). In this context, Durbin must show a "more-than-speculative chance" that these unspecified policies will likely be applied against him in a way that will impede his existing plans to access the Capitol complex to petition government officials. Am. Bar Ass'n v. FTC, 636 F.3d 641, 645 (D.C. Cir. 2011) (quoting Clarke, 915 F.2d at 700–01). Durbin has not met this burden, as he has offered only conjecture that these other policies *may* impede some theoretical future attempt to enter the Capitol. See, e.g., Opp'n at 14. As a result, he does not have standing to challenge these existing policies.

    c. Request for Media Credentials

Finally, although his initial allegations are vague on this matter, Durbin reasserts in his surreply his grievance that he is not a credentialed member of the press and his requests that he be granted a press badge.[1] See Compl. at 15; Surreply at 2. Although Defendants do not address this request in their Rule 12(b)(1) motion, the Court on its own initiative holds that any separate claim here must be dismissed because Durbin lacks standing to pursue it. See Lee's Summit, 231 F.3d at 41.

---

[1] Durbin physically filed a surreply with the Court in April 2023. The Court will grant leave to file this document in a separate order.

To proceed in federal court, a plaintiff must demonstrate that he or she has suffered an alleged injury that is "likely to be redressed by a favorable judicial decision." Spencer, 523 U.S. at 7. Durbin has not shown that awarding him media credentials would remedy any cognizable harm. The only injury that Durbin properly alleged is his denial of access to the Capitol due to the COVID-19 protocols, and he has failed to show why awarding him a press badge is necessary to remedy that moot injury. Going forward, it is also entirely speculative that there are any activities Durbin plans to pursue in the Capitol that he could not perform without a press badge. Durbin's briefing may pose many hypothetical questions, but the Court cannot play such guessing games when it comes to its jurisdictional limits. Furthermore, it is doubtful that any of the Defendants in this lawsuit have the authority to grant Durbin media privileges. Media credentialing is handled through a separate administrative process—one that Durbin believes is overly "burdensome" and opted to forgo in favor of filing a lawsuit against Defendants who do not appear to play any direct role in that process. Compl. at 15. But it is an elementary principle of standing that the alleged injury must be "fairly . . . trace[able] to the challenged action of the defendant," and not the result of "the independent action of some third party not before the court." Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 41–42 (1976). The Court accordingly must dismiss this claim as well.

### IV.    Conclusion

For the foregoing reasons, the motion to dismiss is granted. A separate Order will follow.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   September 11, 2023